**EXHIBIT A**

Form RD 1940-16
(Rev. 7-05)

Form Approved
OMB No. 0575-0172

**UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL HOUSING SERVICE**

**PROMISSORY NOTE**

Type of Loan   SECTION 502

**SATISFIED**

Loan No. _____

This _____ day of _____ ,20 ____
United States of America
By: _____
Title: _____
USDA, Rural Housing Services

Date:   03/06   20 07

2864 East Lake Road

Dunkirk , Chautauqua , NY
(City or Town)        (County)        (State)

(Property Address)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ 142,030.00 (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of _____ 5.7500 %. The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____ , _____ shall be added to the principal. The new principal and later accrued interest shall be payable in __396__ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

II. Payments shall not be deferred. I agree to pay principal and interest in _____396_____ installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the __6th__ day of each month beginning on __April 6__ , 2007 and continuing for __395__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on __March 6__ , 2040 , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ 801.25 . I will make my monthly payment at the post office address noted on my billing statement _____ or a different place if required by the Government.

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Account #

**LATE CHARGES.** If the Government has not received the full amount of any monthly payment by the end of ___15___ days after the date it is due, I will pay a late charge. The amount of the charge will be _____2_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

**BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account #

**NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch Post Office Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

**OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

**WAIVERS.** I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING:** Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

_____ Seal          _____ Seal
Borrower Angelica L Parks                          Borrower

_____ Seal          _____ Seal
Borrower                                                    Borrower

### RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL  $ | |

3

**EXHIBIT B**

Chautauqua County Clerk                                                 17 APR 2007

<u>Return To:</u>

    BLY SHEFFIELD BARGAR PILLITTIERI &
    3 LAKEVIEW AVE
    PO BOX 3327
    JAMESTOWN        NY 14702-3327

Index  MORTGAGE BOOK

Book    02948    Page   0975

No. Pages    0009

Instrument  MTG TAX EXEMPT

Date :    3/06/2007

Time :    12:23:21

Control #   200703060165

INST#       MT 2007 000980

SER#       CX 2006 004714

Employee ID   SWEENEY

PARKS
ANGELICA           L
UNITED STATES DEPARTMENT OF AG
RICULTURE

<u>MORTGAGE TAX</u>

| | | |
|---|---|---|
| COUNTY | $ | 35.00 |
| | $ | .00 |
| SED/CEA | $ | 19.00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| Total: | $ | 54.00 |

| | | |
|---|---|---|
| MORTGAGE AMOUNT | $ | 142,030.00 |
| TOTAL TAX | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| Total | $ | .00 |

STATE OF NEW YORK
Chautauqua County Clerk

**WARNING: THIS SHEET CONSTITUTES THE CLERK'S
ENDORSEMENT, REQUIRED BY SECTION 316-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH.**

       Sandra K. Sopak
       County Clerk



M029480975

16 APR 2007

Form RD 3550-14 NY
(Rev. 6-03)

[Space Above This Line For Recording Data]

Form Approved
OMB No. 0575-0172

### United States Department of Agriculture
### Rural Housing Service

# MORTGAGE FOR NEW YORK

THIS MORTGAGE ("Security Instrument") is made on  March 6, 2007                          . [Date]
The mortgagor is  Angelica L. Parks

                                                                                    ("Borrower").

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| March 6, 2007 | $142,030.00 | March 6, 2040 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower irrevocably grants and conveys to Lender the following described property located in the County of
Chautauqua                                                    , State of New York:

which has the address of   2864 East Lake Road,                                    Dunkirk                , New York   14048
                                            [Street]                                                              [City]                                         [ZIP]

("Property Address");        see attached Schedule A for legal description

According to the Paperwork Reduction Act of 1996, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Page 1 of 6

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Page 2 of 6

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the Property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so. Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.  **Refinancing.**  If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9.  **Inspection.**  Lender or its agent may make reasonable entries upon and inspections of the Property.  Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.  **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.  In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.  In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking.  Any balance shall be paid to Borrower.  In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11.  **Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  **Successors and Assigns Bound; Joint and Several Liability; Co-signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16.  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  **Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.  **Governing Law; Severability.**  This Security Instrument shall be governed by federal law.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.  This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof.  All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

15.  **Borrower's Copy.**  Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

16.  **Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this

Security Instrument.

   **17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

   **18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

   **19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

   **20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

   Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

   As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

   **21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Lender, and default under any other such security instrument shall constitute default hereunder.

   **NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

   **22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be decreed incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

   **23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

   **24.** Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c)

prescribing any other statue of limitations, (d) allowing any right of possession or, (e) limiting the conditions which Lender may be regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider  ☒ Planned Unit Development Rider  ☐ Other(s) [specify]

Witnesses:

_____    _____ _Angelica L Parks_ (Seal)
                                                        Borrower

_____    _____ (Seal)
                                                        Borrower

**ACKNOWLEDGMENT**

STATE OF NEW YORK          }
                           } SS:
COUNTY OF  CHAUTAUQUA       }

    On the ___6th___ day of ___March___ in the year _2007_, before me, the undersigned, a notary public in and for said State, personally appeared ___Angelica L. Parks___, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose names(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the individual(s) or the person on behalf of which the individual(s) acted, executed the instrument.

_____
                    Notary Public

MARK L. BARGAR #02BA4905781
Notary Public, State of New York
Qualified in Chautauqua County
My Commission Expires August 31, 20 09

## SCHEDULE A
### Description

ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Sheridan, County of Chautauqua and State of New York, being part of Lot 49, Town 6 and Range 11 of the Holland Land Company's Survey and further bounded and described as follows:   BEGINNING at a point in the centerline of New York State Route 5 (right of way width varies), also known as S. H. #8304, also known as Lake Road, at the southwesterly corner of lands conveyed by Allan L. Paglia, as Executor of The Estate of Archie J. Paglia, to Mary P. Ark by deed dated April 13, 1993, and recorded in the Chautauqua County Clerk's Office May 4, 1993, in Liber 2291 of Deeds at page 465, said point of beginning located southwesterly, as measured along the centerline of New York State Route 5, a distance of 1012.90 feet from the intersection of the centerline of New York State Route 5 with the centerline of Waite Road;  thence southwesterly, along the centerline of New York State Route 5, on a curve to the left, 84.01 feet to a point, said curve having a radius 2865.00 feet and a chord S 71° 56' 46" W, 84.01 feet; thence N 18° 53' 38" W, radially to said centerline, 26.96 feet to a point in the northerly highway boundary of New York State Route 5;  thence S 75° 24' 38" W, along the northerly highway boundary of New York State Route 5, 2.20 feet to a set rebar with cap at the southeasterly corner of lands conveyed by Archie J. Paglia and Baldasare L. Ursitti to Baldasare L. and Virginia Ursitti by deed dated September 3, 1948, and recorded in the Chautauqua County Clerk's Office March 10, 1949, in Liber 839 of Deeds at page 579;  thence N 06° 38' 04" E, along the easterly line of said Ursitti, 203.64 feet to a set rebar with cap in the southerly line of aforementioned Ark;  thence S 83° 21' 56" E, along the southerly line of Ark, 90.00 feet to a set rebar with cap; thence S 06° 38' 04" W, along the westerly line of Ark, 161.80 feet to a set rebar with cap in the northerly highway boundary of New York State Route 5;  thence continuing along the same course S 06° 38' 04" W, and still along the westerly line of Ark, 30.29 feet to the point of beginning.

STATE OF NEW YORK

COUNTY OF _Oswego_                SS:

     Eileen A. McGrath being duly sworn deposes and says: That I am a Single Family

Housing Underwriter for the United States of America, Acting through Rural

Development, formerly Farmers Home Administration, U.S. Department of Agriculture.

     That Rural Development is an agency of the United States within the U.S.

Department of Agriculture for the purpose of administering Government loan programs,

as a Government entity, it is exempt from the payment of mortgage taxes.  Specific

exemptions are also codified at 7 USC 1984 (1) and 42 USC 1490 h (1).

     This affidavit is made to support request for exemption from mortgage tax.


_Eileen A. McGrath_
EILEEN A. McGRATH


Sworn to before me this

_27th_ Day of _February_, 2007

_Wendy R. Tallents_
Notary Public

WENDY R. TALLENTS
Notary Public, State of New York
No. 01TA6132408
Qualified in Oswego County
Commission Expires August 29, 20 _09_

**EXHIBIT C**



**USDA**

Committed to the future of rural communities.

*United States
Department of
Agriculture*

**Rural Development**
*Centralized Servicing Center
P.O. Box 66511
St. Louis, MO 63166
(800) 414-1226 (Voice)
(800) 438-1832 (TDD/TTY Hearing Impaired Only) or
(314) 457-4563 (FAX)*

December 13, 2012

ANGELICA L PARKS
2864 EAST LAKE ROAD
DUNKIRK, NY 14048

Account Number: 34538893

Dear Homeowner(s):

We have recently received your application for a moratorium. We do not have all the information necessary to determine if you meet the eligibility requirements for a moratorium. We need the following items:

1). Copy of disability and/or short-term disability benefit, or denial letter. 2). Employer letter regarding your leave of absence, benefits paid during the leave period, or that you do not receive benefits. 3). A 12 month history of the child support received from both obligors from 11/30/12 to 12/01/11.

Failure to return this information will result in the Centralized Servicing Center being unable to process your application. BE SURE TO INCLUDE YOUR ACCOUNT NUMBER ON ALL DOCUMENTS RETURNED TO THE CENTRALIZED SERVICING CENTER.

For questions regarding your account, please contact the Centralized Servicing Center (CSC) at 1-800-414-1226 or 1-800-438-1832 (TDD/TTY Hearing Impaired Only), 7:00 a.m. to 5:00 p.m. Central Standard Time, Monday through Friday. With a touch-tone telephone, the Voice Response Unit (VRU) can provide automated , confidential account information seven days per week, outside of normal business hours. When you call or write, please refer to the CSC account number listed above.

UNITED STATES DEPARTMENT OF AGRICULTURE
CENTRALIZED SERVICING CENTER
P.O. BOX 66511
ST. LOUIS, MO  63166

You also have the right to request reconsideration, mediation or an appeal. See the attachment for requesting any of these options.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex , marital status, age (provided that the applicant has the capacity to enter into a binding contract); and because all or part of the applicant's income is derived from any public assistance program; or because the applicant has in good faith, exercised any rights under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission. If a person believes he or she was denied assistance in violation of this law, they should contact the Federal Trade Commission, Washington, D.C. 20580. Thank you for your cooperation in this matter.

Sincerely,
Payment Assistance Section
Cash Management and Borrower Assistance Branch

Attachment

"USDA is an equal opportunity provider, employer and lender."
To file a complaint of discrimination write USDA, Office of Civil Rights, Programs, 300 7th Street SW, Room 400 (Stop 9430),
Washington, DC 20024 or call (866)632-9992 (Voice), (202) 401-0216 (TDD/TTY Hearing Impaired Only) or (202)720-8046 (FAX)

**EXHIBIT D**



| | | |
|---|---|---|
| *United States* *Department of* *Agriculture* | **Rural Development** *Centralized Servicing Center* *P.O. Box 66511* *St. Louis, MO 63166* *(800) 414-1226 (Voice)* *(800) 438-1832 (TDD/TTY Hearing Impaired Only) or* *(314) 457-4563 (FAX)* |

Committed to the future of rural communities.

January 28, 2013

ANGELICA L PARKS
2864 EAST LAKE ROAD
DUNKIRK, NY 14048

Account Number: 34538893  *SS4*

Dear Homeowner(s):

The moratorium request on your loan(s) is denied because:

**You have not experienced a 20% reduction in income in the last 12 months.**

You have the right to request reconsideration, mediation or an appeal. See attachment for requesting any of these options.

For questions regarding your account, please contact the Centralized Servicing Center (CSC) at 1-800-414-1226 or 1-800-438-1832 (TDD/TTY Hearing Impaired Only), 7:00 a.m. to 5:00 p.m. Central Standard Time, Monday through Friday. With a touch-tone telephone, the Voice Response Unit (VRU) can provide automated, confidential account information 7 days per week, outside of normal business hours. When you call or write, please refer to the CSC account number listed above.

**UNITED STATES DEPARTMENT OFAGRICULTURE**
**CENTRALIZED SERVICING CENTER**
**P.O. BOX 66511**
**ST. LOUIS, MO 63166**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex , marital status, age (provided that the applicant has the capacity to enter into a binding contract); and because all or part of the applicant's income is derived from any public assistance program; or because the applicant has in good faith, exercised any rights under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission. If a person believes he or she was denied assistance in violation of this law, they should contact the Federal Trade Commission, Washington, D.C. 20580. Thank you for your cooperation in this matter.

Sincerely,
Payment Assistance Section
Cash Management and Borrower Assistance Branch

"USDA is an equal opportunity provider, employer and lender."
To file a complaint of discrimination write USDA, Office of Civil Rights, Programs, 300 7th Street SW, Room 400 (Stop 9430),
Washington, DC 20024 or call (866)632-9992 (Voice), (202) 401-0216 (TDD/TTY Hearing Impaired Only) or (202)720-6046 (FAX)

**EXHIBIT E**

 **USDA**

**United States
Department of
Agriculture**

**Rural Development**
Centralized Servicing Center
P.O. Box 66827
St. Louis, MO 63166
*(800) 793-8861 (Voice)*
*(800) 438-1832 (TDD/TTY Hearing Impaired Only) or*
*(314) 457-4450 (FAX)*

<u>CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

ANGELICA L PARKS
2864 EAST LAKE ROAD
DUNKIRK            NY 14048

SUBJECT:  NOTICE OF ACCELERATION OF YOUR MORTGAGE LOAN(S); DEMAND FOR PAYMENT OF
THAT DEBT; NOTICE OF INTENT TO FORECLOSE; AND NOTICE OF YOUR  OPPORTUNITY
TO HAVE A HEARING CONCERNING THIS ACTION

Dear   ANGELICA L PARKS

 PLEASE TAKE NOTE that the entire indebtedness due on the promissory note(s) and/or assumption
agreement(s) which evidence the loan(s) received by you from the United States of America, acting
through the United States Department of Agriculture Rural Housing Service (RHS), formerly Farmers
Home Administration, is now declared immediately due and payable and demand is hereby made on
you to pay this entire indebtedness.  If payment in full is not made as demanded herein, the RHS
intends to enforce its real estate mortgage(s) or deed(s) of trust given to secure the indebtedness
by foreclosure of its lien(s) on your house.

| <u>Account Number(s)</u> | <u>Date of Instruments</u> | <u>Amount</u> |
|---|---|---|
|  | 03/06/07 | 142030.00 |

This acceleration of your indebtedness is made in accordance with the authority granted in the
above-described instrument(s).  The reason(s) for the acceleration of your indebtedness is (are)
as follows:

   MONETARY DEFAULT

 The balance of the account is $  127595.49       unpaid principal and
$ 6616.93       unpaid interest, as of  04/27/15, plus additional interest accruing at the rate
of  $ 20.1007       per day thereafter, plus additional advances to be made by the United States
for the protection of its security, the interest accruing on any such advances, fees, or late charges,
and the amount of subsidy to be recaptured in accordance with the Subsidy Repayment Agreement.

USDA is an equal opportunity provider and employer.

If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, found
online at http://www.ascr.usda.gov/complaint_filing_cust.html, or at any USDA office, or call (866) 632-9992 to request the form. You may
also write a letter containing all of the information requested in the form. Send your completed complaint form or letter to us by mail at U.S.
Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202)
690-7442 or email at program.intake@usda.gov.

*F2000004202* L9051SSP

Unless full payment of this indebtedness is received within 30 days from the date of this letter, the United States will take action to foreclose its lien on your house and to pursue any other available remedies. **Payment should be made by cashier's check, certified check, or postal money orders payable to the USDA/RD and mailed to the following address:**

USDA-Rural Development
P.O. Box 790170
St. Louis, MO 63179-0170

If you submit to the United States any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the RHS and yourself, the payment WILL NOT CANCEL the effect of this notice. If insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the United States may have will result and the RHS may proceed as though no such payments had been made.

**YOUR RIGHT TO A DISCUSSION WITH RHS** - You have the opportunity to discuss this decision to accelerate your loan(s) with a RHS official or have an administrative appeal hearing before the foreclosure takes place. This is an opportunity to discuss why you believe the United States is in error in accelerating your loan(s) and proceeding with foreclosure. If you desire to have an informal discussion with an RHS official or have any questions concerning this decision or the facts used in making this decision, you should contact this office in writing. The request for an informal discussion must be sent to the undersigned no later than   05/12/15 . Requests which are postmarked by the U. S. Postal Service on or before that date will be considered as timely received. You also have the right to an administrative appeal hearing with a hearing officer instead of, or in addition to, an informal discussion with this office. If you request an informal discussion with an RHS official, and this does not result in a decision in which you concur, you will be given a separate time frame in which to submit your request for an administrative appeal. See the attachment for your appeal rights.)

**YOUR RIGHT TO AN ADMINISTRATIVE APPEAL HEARING** - If you do not wish to have an informal discussion with an RHS official as outlined above, you may request an administrative appeal with a member of the National Appeals Division Area Supervisor, no later than 30 days after the date on which you received this notice. Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received as requesting an administrative appeal. Please include a copy of this letter with your request.

If you fail to comply with the requirement outlined, the United States plans to proceed with foreclosure. You may avoid foreclosure by (1) refinancing your RHS loan(s) with a private or commercial lender or otherwise paying your indebtedness in full; (2) selling the property for its fair market value and applying the proceeds to your loan(s); (3) transferring the loan(s) and property to an eligible or ineligible applicant with RHS approval; or (4) conveying the property to the Government with RHS approval. Please contact our Centralized Servicing Center office at 1-800-793-8861, if you desire to satisfy your loan(s) by one of the above methods.

You cannot be discriminated against in a credit transaction because of your race, color, religion, national origin, sex, marital status, handicap, or age (if you have the legal capacity to enter into a contract). You cannot be denied a loan because all or a part of your income is from a public assistance program. If you believe you have been discriminated against for any of these reasons, you should write to the Secretary of Agriculture, Washington, D.C. 20250.

You cannot be discriminated against in a credit transaction because you in good faith exercised your rights under the Consumer Credit Protection Act. The Federal Agency responsible for seeing this law is obeyed is the Federal Trade Commission, Washington, D.C. 20580.

For questions regarding your account, please call Default Management toll free at 1-800-793-8861 or 1-800-438-1832 (TDD/TTY Hearing Impaired Only), 7:00 a.m. to 5:00 p.m., Monday through Friday, Central Time. Please refer to your Account number when you write or call us. Thank you.


UNITED STATES OF AMERICA
BY

*Thomas B. Herron*

Thomas B Herron
Director, Default Management Branch
Rural Development
United States Department of Agriculture


Date:    04/27/15
Attachment
CC:    State Office


This letter was mailed certified and regular mail on    04/27/15.

*F2000004204* L9051SSP

**PITNEY BOWES**
**USPOSTAGE**
**$06.480**
JAN 29 2015
ZIP 63120
011473
21 3002822

UNC

Patents 5,573,377
5,669,498
5,948,809
Sur Laser for « Tm/USA CMF-073 03/11

**UNCLAIMED**

**CERTIFIED MAIL**

**USPS CERTIFIED MAIL**

9207 1969 0087 3050 8193 05

PS Form 3800,03/08

**Article Addressed To:**

ANGELICA L PARKS

2864 EAST LAKE ROAD
DUNKIRK, NY 14048

48S9T22  F001

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature: ( □Addressee or □Agent)

X

B. Received by: (Please Print Clearly)

C. Date of Delivery

D. Addressee's Address (If Different From Address Used by Sender)

Secondary Address / Suite / Apt. / Floor (Please Print Clearly)

Delivery Addr—

City

**Sender:**
USDA RURAL DEVELOPMENT
FC214 ACCELERATIONS
4300 GOODFELLOW BLVD BLDG
105ECSC
SAINT LOUIS, MO 63120-1703

**CERTIFIED MAIL**